STATE v. FRANK BELL.

*Tampering with Jury—Discharge before Verdict—Jeopardy.*

1. The necessity of doing justice arising from the duty of courts to guard its administration against all fraudulent practices, is an exception to the rule that a jury sworn in a capital case cannot be discharged without the prisoner's consent until they have given a verdict.
2. *Therefore*, where the jury were sworn and impaneled in a trial for murder, and the court ordered a mistrial on the ground that one of the jury had fraudulently procured himself to be selected at the instance of the prisoner to secure an acquittal, *it was held* that there was no jeopardy, and that an order remanding the prisoner for another trial was proper.

(*State* v. *Prince*, 63 N. C., 529; *State* v. *Jefferson*, 66 N. C., 309; *State* v. *McGimsey*, 80 N. C., 377; *State* v. *Wiseman*, 68 N. C., 203; *State* v. *Bailey*, 65 N. C., 426, cited and approved.)

PETITION for a *Certiorari* filed by the Prisoner and granted at June Term, 1879, of THE SUPREME COURT.

·  The prisoner was put upon trial for murder at Spring Term, 1879, of PITT Superior Court, before *Seymour*, J.

After the jury were sworn and impaneled, His Honor upon the facts set out in the opinion of this court ordered a mistrial, refused to discharge the prisoner, and remanded him to jail to be held for another trial. And thereupon the prisoner obtained a writ of *certiorari* to bring up the record and review the ruling of the court below. Upon the argument here, the state relied mainly upon *Wiseman's* case, 68 N. C., 203.

*Attorney General*, for the State.
*Messrs. Gilliam & Gatling*, for the prisoner.

ASHE, J.   The prisoner was indicted at spring term, 1879, of the superior court of Pitt county, with Reuben Harris, for the murder of one John Briley. Harris was charged in the indictment as principal, and the prisoner as being present, aiding and abetting the said Harris in the said felony and murder. On their arraignment they plead not guilty, and a special *venire* was issued, and from those returned a jury of twelve men were drawn, sworn and impaneled to try the issue between the state and the prisoners.

After the jury were charged with the prisoners but before any evidence was offered by the state, the solicitor for the state moved for a mistrial as to the prisoner, Bell; and in support of his motion introduced two witnesses, to wit, one Forbes and one Harrington, from whose testimony His Honor found the following facts:

1. "That J. G. Bell, the brother of the prisoner, Frank Bell, was his agent in conducting the defence."

2. "That by the consent and procurement of the prisoner, Bell, one Naseby Mills, who had previously, as was known

to the said prisoner, been engaged in assisting him in his defence, was procured and impaneled as a juror. That said Naseby Mills by the procurement of said prisoner, procured himself to be sworn upon the jury by taking a false oath, viz: that he had not formed and expressed an opinion that prisoner was not guilty, when in fact he had formed and expressed such opinion, for the purpose of acquitting the prisoner."

And from these facts the court found as conclusions of law:

1. That the jury were by the fraud of the prisoner impaneled with the view of securing his acquittal.

2. That said prisoner was never in jeopardy.

Thereupon the court ordered a mistrial as to the prisoner Bell, to which he excepted. The prisoner then moved for his discharge, which was refused, and he was remanded to jail for another trial, and his case was brought to this court by a writ of *certiorari.*

It is insisted that His Honor committed an error in ordering a mistrial and refusing to discharge the prisoner. The facts found are conclusive and not the subject of review in this court, but the conclusions of law from them are reviewable. *State* v. *Prince,* 63 N. C., 529 ; *State* v. *Jefferson,* 66 N. C., 309 ; *State* v. *McGimsey,* 80 N. C., 377. And the question for our consideration is, whether His Honor's reason for refusing to discharge the prisoner was sufficient.

It is a well established and is a sacred principle of the common law, that a man cannot be put twice in jeopardy of life or limb ; and the same principle has been declared in the constitution of the United States. Hawkins lays it down that a jury sworn and charged in a capital case cannot be discharged without the prisoner's consent till they have given a verdict. Vol. 2, ch. 2, § 1. But to this general rule, cases of necessity are excepted, and these cases of necessity are of two classes, and numerous: 1. What are de-

38

nominated physical necessities, as where during trial, the judge, juror or prisoner is taken suddenly ill; the judge dies; or the prisoner or a juror becomes insane; or a juror abandons his fellows; or where there is no possibility for the jury to agree and return a verdict, and such like cases. 2. What is termed *the necessity of doing justice*, which arises from the duty of the court to prevent the obstruction of justice by guarding its administration against all fraudulent practices, such as tampering with the jury, keeping back the witnesses; and to which may be added as especially belonging to this class, the fraudulent introduction into the panel of a perjured juror, who at the instance of the prisoner has procured himself to be selected on the jury for the purpose of acquitting the prisoner. *State* v. *Wiseman*, 68 N. C., 203; *State* v. *Bailey*, 65 N. C., 426; *Com.* v. *Cook*, 6 Serg. & Rawle, 577.

If a judge were to sit on the bench and allow such a fraud as is disclosed in the facts found by His Honor in this case, the trial by jury would be a farce, and the administration of justice a mere mockery. It is his duty to see that there is a fair and impartial trial, and to interpose his authority to prevent all unfair dealing and corrupt or fraudulent practices on the part of either the prosecution or defence. Fraud vitiates every transaction into which it enters; and whenever it is of such a character and extent as necessarily to prevent a valid conviction, there is no jeopardy, and the prisoner may be held for another trial. Bish. Cr. Law, § 852. In this case the prisoner had every assurance of an acquittal if the trial had proceeded to a verdict. His friend in his anxiety to serve him and save his life, had through fraud and perjury wormed himself into the jury for the express purpose of acquitting him. His life was not in danger. There was no jeopardy.

We therefore hold that the conclusion of His Honor in the court below from the facts found by him, that a proper

legal necessity existed for ordering a mistrial, was not erroneous, and that the prisoner was properly remanded for another trial. Let this be certified to the superior court of Pitt county, that further proceedings may be had in accordance with this opinion and the laws of the state.

PER CURIAM. No error.